## BYRNE MFG. CO. v. AMERICAN FLANGE & MFG. CO., Inc.

### No. 7242.

Circuit Court of Appeals, Sixth Circuit.

Jan. 12, 1937.

J. F. Oberlin and George B. Pitts, both of Cleveland, Ohio, for appellant.

George L. Wilkinson, of Chicago, Ill. (Harry W. Lindsey, Jr., of Chicago, Ill., James H. Hayes, of New York City, Rector, Hibben, Davis & Macauley, of Chicago, Ill., and Brockett, Hyde, Higley & Meyer, of Cleveland, Ohio, on the brief), for appellee.

Before HICKS and SIMONS, Circuit Judges, and HAHN, District Judge.

HICKS, Circuit Judge.

Suit by the American Flange & Manufacturing Company, Inc., appellee, versus the Byrne Manufacturing Company, appellant, for infringement of (1) letters patent No. 1,513,637, October 28, 1924, to Morris Schwartz for "bushing," and assigned to appellee; and of (2) letters patent No. 1,644,154, October 4, 1927, to Charles F. Schriner for "bushing for metal receptacles," and assigned to appellee.

Claims 1, 3, 4, 5, and 6 of Schwartz, and both claims of Schriner, are involved. The Schriner claims and claim 1 of Schwartz are article claims for bushing, and claims 3, 4, 5, and 6 of Schwartz are for a method of applying bushing to metal containers. The defenses were invalidity and noninfringement. Appellant also set up a counterclaim.

The District Court held all the claims in suit valid and infringed and dismissed the counterclaim.

Both patents relate to bungs and bung holes for metal barrels or other containers for liquids. Wooden bungs for wooden barrels are as old as the art of barrel making and were sufficient for their purpose, but they are unfit for use in modern metal containers. The stock of the metal containers is too thin to hold a wooden bung or plug without leakage and the plug itself cannot be easily inserted and removed without damage to the container.

To overcome this defect, makers of metal containers fitted the bung holes with a cylindrical metal bushing having an inwardly extending interiorly threaded tubular flange for rotating engagement with an exteriorly threaded metallic

bung. The bushing was provided with an annular flange extending laterally to overlay the stock of the container around the bung hole to which it was welded.

Numerous objections arose to the "welded on" bushing. The welding was expensive and leakage often occurred between the bushing and the container wall. The heating incidental to the welding process frequently warped both the flange and the container wall, and also made it impossible to use a gasket there-between since the heat would destroy the gasket. It would also oxidize the metal, producing scale, which would fall into the container.

Schwartz's problem was to obviate these defects by providing a suitable and durable bushing and a leak proof method for applying it to the bung holes. His bushing consisted of a cylindrical part adapted for insertion within a collar formed of the container stock which had been forced inwardly from around the edges of the bung hole. The inner end of the bushing was adapted to be curled under, around, and over the edge of the collar, and the outer end had a laterally projecting flange of noncircular contour adapted to fit within a seat or socket of like contour formed by a boss or raised portion in the container stock. It was screw threaded interiorally to receive a threaded stopper from which a nut projected to permit the use of a wrench in inserting and removing.

Schwartz's method of applying his bushing was to punch a circular hole through the container stock, remove the center, and force inwardly the metal at the edges of the hole to form an annular collar; and to force outwardly a portion of the container stock to form an annular boss around the bung hole but spaced therefrom to provide a noncircular seat. The bushing was then fitted in the bung hole and by means of another set of dies the inner edge was rigidly curled under, around and over the lower edge of the collar and its lateral noncircular flange was forced tightly within the noncircular seat or socket formed in the container stock around the bung hole.

The Schwartz device and its application was economical. It required no skilled labor as did the welding process. Curling the inner edge of the tubular bushing under, around, and over the edge of the container collar, and seating the lateral flange of noncircular contour in its noncircular seat in the stock of the container, prevented any rotative movement of the bushing and permitted the plug to be forcibly and tightly screwed into the bushing. Chance of leakage was effectively forestalled, a needed and long sought result.

Appellee has sold 56,000,000 sets of the Schwartz bushings in the United States and many millions in foreign countries.

Claims 1 and 3 of the Schwartz patent are printed.[1]

Relative to these two claims, on October 28, 1924, appellee, as owner of the patent, filed a disclaimer.[2]

It is urged that this disclaimer enlarges the scope of claims 1 and 3 of Schwartz and is therefore invalid. We think otherwise. The disclaimer adds no new element. The effect of it as to claim

---

[1] "1. An annular bushing having a flange with edge portions upon its perimeter at different distances from the axis of the bushing, in combination with a support through which the bushing extends and formed with a seat that has portions which engage the aforesaid edge portions of the flange perimeter to hold the bushing from rotation with respect to the support. * * *

"3. The method of applying bung rings to metal containers, consisting of punching an annular hole in the container wall, stamping the surrounding metal to form a socket of greater diameter than said hole, inserting a ring into said hole, having a flange seating in said socket, the contacting edges of said socket and flange being so shaped as to prevent the turning of said ring in seated position, and sealing said ring within said hole."

[2] "1,513,637.—Morris Schwartz, Chicago, Ill. Bushing. Patent dated October 28, 1924. Disclaimer filed February 9, 1934, by the assignee, American Flange & Manufacturing Co., Inc.

"Hereby disclaims from the scope of said claim 1 all annular bushings in combination with a support, in which the support is not a metal container having a hole in which the bushing is sealed by rolling the marginal portion of the bushing over, upon and around the edge of an annular flange surrounding the hole; and does disclaim from the scope of claim 3 all methods of applying bung rings to metal containers which do not include as the sealing step rolling the marginal portion of the ring over, upon and around the edge of the angularly projecting annular flange surrounding the hole."

1 is to limit the engagement between the perimeter of the laterally projecting flange of the bushing and its seat to certain characteristics; and as to claim 3, to limit the sealing step of the bushing to the process of rolling the inner edge thereof, under, around, and over the edge of the annular collar surrounding the hole. See Wood v. Peerless Motor Car Corp., 75 F.(2d) 554, 556 (C.C.A.6); N. O. Nelson Mfg. Co. v. F. E. Meyers & Bro. Co., 29 F.(2d) 968, 969 (C.C.A.6).

 We think that the claims of Schwartz in issue disclose invention, both for the bushing and the method of securing it to the container. They represent more than a refinement of the prior art; they are a step in advance of it. See Alliance Securities Co. v. De Vilbiss Mfg. Co., 76 F.(2d) 503 (C.C.A.6). The product was both new and useful and was a decided commercial success. While commercial success cannot alone be accepted as evidence of invention, it may be considered along with all other evidence in determining whether invention exists. Temco Co. v. Apco Co., 275 U.S. 319, 324, 48 S.Ct. 170, 171, 72 L.Ed. 298. The elements of the claims were not old in combination. In the new combination they produced a new result and therefore were not anticipated. Webster Loom Co. v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177; Detroit Carrier & Mfg. Co. v. Dodge Bros., 33 F. (2d) 743, 747 (C.C.A.6); Michigan Carton Co. v. Sutherland Co., 29 F.(2d) 179, 183 (C.C.A.6); Ferro Concrete Construction Co. v. Concrete Steel Co., 206 F. 666, 669 (C.C.A.6); Kellogg Switchboard & Supply Co. v. Dean Elec. Co., 182 F. 991, 998 (C.C.A.6).

Of the prior art patents, concededly the most pertinent is the patent to Phillips, No. 753,308, March 1, 1904. The patent to Willis, No. 1,096,280, May 12, 1914, is also strongly relied upon. But in neither of these patents is the bushing sealed by rolling its marginal portion around and over the edge of the annular collar and it follows of course that in neither is any step disclosed for the method of sealing. It is manifest that neither Phillips nor Willis had in mind a nonrotative bushing in which the plug might be forcibly and securely screwed to prevent leakage for in both Phillips and Willis a valve was located beneath the plug for this purpose.

Appellant relies also upon prior use, but we do not think that proof of it was established beyond the reasonable doubt which the law requires. The relevant evidence is that the Galesburg Cornice Works of Galesburg, Ill., manufactured metal barrels with a bushing pressed into the bung hole from about 1912 to 1916, but the Galesburg bushing was substantially identical with that shown in the Willis patent, No. 1,096,280.

Appellant urges that the Schwartz patent was invalid because its bushing had been sold and publicly used more than two years prior to August 17, 1922, the filing date of the application. This claim is based upon the testimony of the witness Cheviron. Cheviron testified that Schwartz came to Detroit about August, 1920, and explained to him his pressed-in flanges; that Schwartz had samples and stated that he would be in production very shortly and wanted to get barrel manufacturers interested. He left a few of the samples which were substantially like those disclosed in the Schwartz patent but Cheviron was not definite as to the date of the visit. He gives the date as "about August, 1920," as "the fore part of August, 1920," and "an early August date 1920." This evidence is unaided by any records, and we cannot say beyond a reasonable doubt that it established a use or sale more than two years before August 17, 1922. See Austin Mach. Co. v. Buckeye Trac. Ditcher Co., 13 F.(2d) 697, 700 (C.C.A.6); Reo Motor Car Co. v. Gear Grinding Mach. Co., 42 F.(2d) 965, 968 (C.C.A.6).

Appellant relies upon the Behringer patent, No. 1,479,358 January 1, 1924, as an anticipation of Schwartz. We need not discuss this patent in detail because the evidence established that Schwartz disclosed his invention to the witnesses, Dingle, Daniels, and Cheviron in 1921. These witnesses were then connected with the Welded Steel Barrel Corporation and in that year Schwartz sold his bushings to that company and they were then used in making Arcola tanks. One of these tanks, equipped with the Schwartz bushings, was in evidence. The testimony of these witnesses is supported by numerous letters written by Cheviron, the manager of the company, to the Schwartz Company from December 14, 1920, to December 7, 1921, relative to Schwartz flanges. This evidence carries the Schwartz invention back of March 18, 1922, the filing date of the Behringer application.

 Schriner patent No. 1,644,154: We think this patent is invalid. It was is-

sued October 4, 1927, upon an application filed October 28, 1925. The Schwartz patent, therefore, was older.

■ Appellee concedes that Schriner differs from Schwartz "only in the means for securing the bushing against rotation relative to the container." The means provided by Schriner for this purpose involved the use of notches located in the periphery of the lateral flange on the bushing to fit around raised lugs on the container wall. But fitting notches into projecting lugs for anchorage is old. The addition of this familiar device to the Schwartz construction does not justify a patent. Hug v. Lakewood Engineering Co., 7 F.(2d) 98, 99 (C.C.A.6); Stockham Pipe & Fitting Co. v. Ohio Steel Fdry. Co., 78 F.(2d) 111, 113 (C.C.A.6).

■ We think that claim 1 of the Schwartz patent for bushing is infringed by appellant's combination. The claim reads upon appellant's structure. It is urged that in appellant's bushing the projecting flange is circular and therefore its perimeter cannot be at different distances from its axis. But appellant's projecting flange is not circular. As indicated by the drawing on Exhibit 26, as well as figures 2, 5, and 7 of the Dillhoefer Reissue patent, No. 19,118, under which appellant's bushing was constructed, the claimed circular perimeter had at least four projections upon it and its outer edge so constructed continuously engaged portions of the seat on the container stock.

We also think appellant infringed the method claims 3, 4, 5, and 6 of the Schwartz patent. Witnesses who, from experience, were thoroughly familiar with the methods whereby both the Schwartz bushing and appellant's bushing were applied, agreed that the methods of application in each were substantially the same.

It was not error to dismiss appellant's counterclaim.

■ Its basis was that appellee gave notice of infringement before it filed its disclaimer, and that it should have known at the time the notice was given that claims 1 and 3 of Schwartz were invalid. In addition appellant offered copies of answers in former suits, brought by appellee under the Schwartz patent, which it insisted gave notice of certain prior art patents which would invalidate the Schwartz claims. Whether such notice of alleged infringement amounted to a legal wrong depends upon whether it was given in bad faith or maliciously, and this question depends in turn upon other matters, none of which appear in the evidence received or offered. See Alliance Secur. Co. v. De Vilbiss Mfg. Co., 41 F.(2d) 668, 670 (C.C.A.6); Oil Conservation Engineering Co. v. Brooks Engineering Co., 52 F.(2d) 783, 785 (C.C.A.6).

The decree is affirmed as to the Schwartz patent, No. 1,513,637, but reversed as to the Schriner patent, No. 1,-644,154, and the case is remanded, with directions to dismiss the bill as to it.